# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CEDRIC BROWN, SR., )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　)<br>　　v. 　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>CAROLYN W. COLVIN, 　　　　)<br>Acting Commissioner of the 　　)<br>Social Security Administration, 　)<br>　　　　Defendant. 　　　　　　) | CAUSE NO.: 2:14-CV-23-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Cedric Brown, Sr. on January 27, 2014, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], filed by Plaintiff on July 11, 2014. Plaintiff requests that the March 5, 2013 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On October 17, 2014, the Commissioner filed a response, and Plaintiff filed a reply on November 17, 2014. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff suffers from depression, high blood pressure, hyperthyroidism, and neck, back, arm, and leg pain. On April 8, 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging an onset date of February 1, 2007. The application was denied initially on July 27, 2011, and upon reconsideration on November 3, 2011. Plaintiff timely requested a hearing, which was held on February 1, 2013, before Administrative Law Judge ("ALJ") Henry Kramzyk. In appearance were Plaintiff, his attorney, and a vocational expert.

The ALJ issued a written decision denying benefits on March 5, 2013, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date.

3. The claimant has the following severe impairments: hypertension/angina; hyperthyroidism; and degenerative disc disease of the lumbar, thoracic and cervical spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to no more than occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and no more than occasional balancing, stooping, and crouching, but never any kneeling or crawling. Further, the claimant must avoid concentrated exposure to hazards such as unprotected heights.

6. The claimant is capable of performing past relevant work as a purchasing clerk, shipping order clerk, and fork lift driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2007, through the date of this decision.

(AR 24-32).

On November 29, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On January 27, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

3

664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from

4

doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

5

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Seeking reversal of the ALJ's decision and remand for further proceedings, Plaintiff argues that (1) the ALJ erred in several ways in determining Plaintiff's residual functional capacity, (2) the ALJ erred in rejecting the opinions of Plaintiff's treating nurse practitioner on the basis of her status as a "non-acceptable medical source," and (3) the ALJ erred in evaluating Plaintiff's credibility. The Commissioner responds that the ALJ's decision is a thorough and reasonable review of the record as a whole that considered numerous factors such as Plaintiff's conservative treatment, mild test results, multiple examinations showing few significant abnormalities, inconsistencies including Plaintiff's statements about marijuana use, and multiple doctors' opinions supporting a finding of non-disability. The Court considers each of Plaintiff's arguments in turn.

### A. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1545(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. In arriving at an RFC, the ALJ "must

consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Remand is required in this case because the ALJ's finding that Plaintiff can stoop occasionally (up to one third of the workday) is not supported by the record. At the physical consultative examination on July 1, 2011, Dr. Smejkal found on examination that Plaintiff was "unable to stoop and squat." (AR 330). On the range of motion chart, Dr. Smejkal noted that Plaintiff had 30 degrees of flexion forward; 90 degrees is normal. Plaintiff testified that he cannot bend at the waist or squat. (AR 62).

In *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013), the court found that the ALJ failed to resolve inconsistency between the opinion of the state agency reviewer that the claimant could stoop occasionally and the report of the consultative examiner who found that the claimant had 50 degrees of flexion in her lower back and was unable to squat. *Id*. In *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), the court similarly criticized the ALJ for failing to resolve the inconsistency between the consultative examiner's report that the claimant had only 40 degrees of flexion in his back and the physician opinion that the claimant could stoop occasionally.

The error in this case is more egregious because the consultative examiner found that Plaintiff was "unable to *stoop* and squat," (AR 330),[1] in addition to the finding of decreased flexion of 30 degrees. And, Plaintiff testified that he could not bend at the waist or squat. The ALJ ignored Dr. Smejkal's finding that Plaintiff was "unable to stoop and squat," noting only that Dr. Smejkal found "decreased range of motion." (AR 28). The ALJ also mistakenly reported that Plaintiff was able to get on and off the examination table without difficulty; in fact, Dr. Smejkal's findings

---

[1]Inexplicably, the Commissioner contends in the response brief that Dr. Smejkal never said that plaintiff cannot stoop. (Resp. Br. 13).

regarding "gait" provided: "He has an unsteady gait. He is unable to squat and stoop. He is unable to walk heel to toe and tandemly. He is able to get on and off the examination table *with difficulty* and did not require any assistance. He is able to stand from a sitting position *with difficulty*." (AR 330) (emphasis added). Moreover, there is no evidence in the record that Plaintiff can stoop. *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2014); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The ALJ erred by finding Plaintiff could stoop on an occasional basis without resolving the inconsistency between such a finding and Dr. Smejkal's findings of an inability to stoop and squat and flexion of 30 degrees.

Plaintiff also argues that the ALJ erred in the physical RFC by filling an "evidentiary deficit" with his own lay medical opinion. The Court disagrees. As noted above, the determination of the RFC is an administrative decision based on the medical evidence, including the opinion evidence, before the ALJ. In this case, the ALJ properly rejected the opinion of the treating nurse, as discussed in the next section below, and gave only "partial weight" to the opinions of the nonexamining state agency physicians who found Plaintiff capable of performing medium work. In contrast, the ALJ found that Plaintiff was capable of a limited range of light work and made the finding based on Plaintiff's subjective complaints, the nature of his objective spinal testing, his abnormalities documented upon clinical examination, and the "specific lack of focal or neurological deficits upon clinical examination." The state agency opinions for medium work, which were less restrictive than the RFC crafted by the ALJ, support the ALJ's RFC with greater limitations and serve to undermine Plaintiff's allegations of complete disability. *See, e.g.*, *Merritt v. Astrue*, 872 F. Supp. 2d 742, 755 (N.D. Ill. 2012). Other than stooping, Plaintiff does not identify any record evidence that shows he was more greatly limited than the RFC. This is not a case in which the ALJ made a conclusion about

8

a medical condition. With the exception of the narrative regarding stooping, the ALJ provided a sufficient narrative to support the RFC finding. *See* SSR 96-8p, at *7; *compare Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (reversing because the ALJ did not explain how he arrived at his conclusions in the residual functional capacity assessment).

Finally, Plaintiff argues that the ALJ failed to account for his limitations in social functioning and in concentration, persistence, or pace. Remand is not required on this basis. At step three of the sequential evaluation, the ALJ found that Plaintiff had mild limitations in social functioning and in concentration, persistence, or pace based on his medically determinable impairment of depression. (AR 24-25). The ALJ did not include any limitations in the RFC based on these mild limitations. However, the ALJ discussed Plaintiff's mental limitations in the RFC determination. The ALJ reviewed the findings of consultative examiner Dr. Karr and found them to be without "significant psychiatric symptomology." (AR 29). The ALJ also reviewed the findings of the consultative reviewers who found Plaintiff's psychiatric impairments to be "non-severe" in nature and gave their opinions great weight. Plaintiff does not acknowledge this analysis by the ALJ. Plaintiff does not address the opinions of the state agency doctors, nor does he cite any evidence supporting limitations related to social functioning or concentration, persistence, or pace. The ALJ properly considered the evidence and did not err by not incorporating any limitations based on Plaintiff's mild mental limitations. *See Kinsey-McHenry v. Colvin*, No. 2:12-CV-332, 2013 WL 5460161, at *9 (N.D. Ind. Sept. 30, 2013).

### B. Treating Nurse

In weighing opinion evidence, the ALJ noted that treating nurse practitioners Nicole Richards and Mary Hutchinson each submitted a medical assessment of Plaintiff's impairments that

limited Plaintiff to work at less than the sedentary exertional level. The ALJ then found that, although a nurse is not an "acceptable medical source" as defined in 20 C.F.R. §§ 404.1513(a); 416.913(a), "the opinion of a nurse can be used as evidence to show the severity of a claimant's impairment(s) and how it affects the individual's ability to function, as a nurse is an 'other source' as defined in 20 §§ CFR 404.1527(d) and 416.927(d)." (AR 30). The ALJ explained that he took into consideration the nurses' assessments but found that the clinical records did not support a less-than-sedentary exertional level.

Plaintiff argues that the ALJ failed to weigh the opinions according to Social Security Ruling 06-3p. Ruling 06-3 provides:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

2006 WL 2329938, at *2. While opinions from other medical sources are not entitled to controlling weight, "[i]n deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."[2] *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010). In other words, the ALJ should apply the same criteria used to evaluate medical evidence from "acceptable medical sources," such as how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well

---

[2] The criteria set forth in 20 C.F.R. § 404.1527(d)(2) includes: (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the doctor who is providing the opinion, and (6) any other factors that tend to support or contradict the opinion.

10

the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5.

Plaintiff notes that the nurses treated him several times over a seven-year period and that, in the treatment notes, they documented Plaintiff's complaints of low back pain, observed positive bilateral straight leg raise tests on three occasions, prescribed Tramadol for pain management, observed clinical signs such as reduced range of motion in the lumbar spine and reduced flexion at the waist and hip, and recorded Plaintiff's pain levels. Plaintiff criticizes the ALJ for not discussing these factors that would support giving more weight to their opinions.

With the exception of Plaintiff's difficulty stooping, the ALJ's decision abided by the applicable rules in considering the relevant evidence, including the records from and the opinion of the treating nurse practitioners. Throughout the RFC analysis, the ALJ thoroughly explained the "aforementioned clinical records," on which he discounted the nurses' more restrictive opinions; this included a discussion of the clinical findings made just a few weeks after the opinions for sedentary work in early January 2013. On January 24, 2013, nurse Hutchinson's findings showed normal gait, stance, and cognitive functioning; full strength in the extremities, brisk deep tendon reflexes, and intact neurological findings. *See* (AR 28, 494-95, 498). Plaintiff offers no analysis of the ALJ's extensive findings throughout the RFC analysis.

In addition, the ALJ considered some of the nurses' findings identified by Plaintiff. For example, the ALJ noted that there were examination findings showing decreased range of spinal motion and positive straight leg raise testing, but Plaintiff was able to "deal with the pain" by taking over-the-counter analgesics and other prescribed medications. (AR 28, 350, 373-417, 530). Thus,

the Court finds that the ALJ did not err in his consideration of and explanation for the weight given to the nurses' opinions, and remand on this issue is not required. However, given the listed factors that must be considered when evaluating the opinion of another medical source, it would have been preferable for the ALJ to give a fuller discussion of the nurses' opinions under SSR 06-3p. Because the Court is remanding on Plaintiff's inability to stoop, the ALJ should discuss the factors and explain, in the context of weighing the nurses' opinions, how the other evidence does not support the greater restriction to sedentary work that they found.

As for Plaintiff's inability to stoop, on January 30, 2013, nurse Richards found that Plaintiff was able to squat only 50% and that he was able to do so only by applying pressure to the right leg; she also noted that pain was elicited on range of motion. (AR 498). Richards opined in her assessment that Plaintiff cannot stoop, (AR 482), which is consistent with Plaintiff's testimony and Dr. Smejkal's examination findings. Thus, on remand, the ALJ is directed to explicitly discuss this opinion of nurse Richards in relation to nurse Richards' findings, Plaintiff's testimony, and Dr. Smejkal's examination finding in determining both the weight to give to nurse Richards' opinion and in developing the RFC.

## C. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3); 416.629(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367 (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff criticizes the ALJ's credibility determination on the bases that he discredited Plaintiff largely based on objective factors, did not consider all of the factors, and improperly considered Plaintiff's prior use of marijuana. The Court considers each argument in turn.

First, Plaintiff argues that the ALJ largely discounted his allegations because of the objective diagnostic testing. In the roadmap of his credibility determination and RFC analysis, the ALJ noted "objective diagnostic testing that is not supportive of the intensity, persistence, and limiting effects of the symptomology alleged by the claimant." (AR 27). Later, in his analysis of the medical records, the ALJ states that, "despite apparent diagnosis of cervical radiculopathy, the record does not contain diagnostic testing that would indicate specific loss of neurological focus." (AR 28).

13

Plaintiff does not dispute the accuracy of this statement. Instead, Plaintiff argues that he had "other positive objective signs of degenerative disc disease," detailing MRI results showing abnormalities, positive straight leg raising tests, and decreased range of motion findings. (Pl. Br. 12-13). Specifically, Plaintiff cites a March 13, 2012 MRI of the lumbar spine, (AR 445), Dr. Smejkal's July 1, 2011 consultative examination, (AR 330, 332), and the February 16, 2012 and November 4, 2012 treating notes of nurse Richards, (AR 512, 537).

Yet, the ALJ did not deny that there were objective signs of impairment and, in fact, cited many of the same facts Plaintiff cites, including the March 13, 2012 MRI of the lumbar spine and Dr. Smejkal's consultative examination. Although the ALJ cited the nurses' treatment records, he did not cite the same pages identified by Plaintiff in his brief. And, the ALJ was more accurate in citing the results of the MRI of the lumbar spine, noting that the tests showed only "mild" degenerative disc disease, a "small" disc protrusion of the lumbar spine, and "mild" cervical disc degeneration. (AR 27). Moreover, the ALJ acknowledged that the clinical records noted "decreased range of spinal motion and positive straight leg raising testing" as well as paraspinal tenderness. (AR 27). The ALJ reasonably found that despite those objective and clinical findings, "the claimant's record indicates that he takes over-the-counter analgesics that 'allow him to deal with the pain,' as well as other prescribed medications." (AR 28).

Plaintiff nitpicks at two statements, one in an introductory clause and the other an analysis of a specific record, without acknowledging the full extent of the ALJ's discussion of the medical record. Nor did the ALJ rely on the two quoted statements as being more persuasive than other evidence of degenerative disc disease. The ALJ emphasized that the many exams and tests showed few abnormalities; many of the abnormalities were only mild; Plaintiff was able to deal with his pain

using over-the-counter medications and other prescriptions; his treatment was conservative and routine; the abnormalities did not cause functional problems reflected by focal or neurological deficits; and the state agency reviewing doctors agreed that these tests and findings did not indicate the inability to perform light work. (AR 27-29). The ALJ did not err in considering the objective evidence in the context of the credibility determination.

Second, Plaintiff suggests that the ALJ did not consider "all avenues presented that relate to pain" and instead that the ALJ's analysis of his pain was limited only to the objective evidence. (AR 13). This is an inaccurate statement of the ALJ's decision. The ALJ cited Plaintiff's activities, as recorded by consultative examiner Dr. Kar and considered that Plaintiff drove unaccompanied to several consultative exams. He noted Plaintiff's inconsistent statements regarding the use of marijuana (discussed more fully below), the effectiveness of Plaintiff's treatment, and Plaintiff's use of over-the-counter pain medication. As for the intensity and persistence of his symptoms, the ALJ noted the conservative treatment regimen, which "consisted of routine medication management, with a lack of documented hospitalization." (AR 28). Plaintiff does not discuss this reasoning. The ALJ did not err by not discussing every possible factor or detail in the record. *See Diaz*, 55 F.3d at 308; *see also Schrieber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013). The ALJ satisfied his burden to minimally articulate his reasons and build a bridge between the evidence and his credibility determination.

Finally, one of the factors the ALJ considered in discounting Plaintiff's credibility was his inconsistent statements regarding his marijuana use. The ALJ noted that, while Plaintiff denied the use of street drugs to Dr. Smejkal at the consultative examination, he indicated in his reports to the Social Security Administration that he regularly used marijuana. The ALJ reasoned that, "[a]lthough

15

the inconsistencies may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information obtained from the claimant may not be entirely reliable." (AR 29).

First, Plaintiff argues that the ALJ failed to identify which of Plaintiff's statements were less credible "on account of his marijuana use, or how specifically that marijuana use undermined his credibility as a whole." (Pl. Br. 15). Plaintiff misunderstands. The ALJ did not discredit Plaintiff because he *used* marijuana but rather because he made inconsistent statements about that use. It is proper for an ALJ to consider inconsistencies in a claimant's statements in making a credibility determination. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005).

Second, Plaintiff argues that the ALJ "afforded little weight to *all* of [his] allegations in light of this one inconsistency (AR 29), without further analysis." (Pl. Br. 15). The ALJ's statement that, "[c]onsequently, the undersigned affords little weight to the subjective reports and complaints of the claimant," (AR 29), comes at the end of the paragraph discussing the inconsistent statements regarding marijuana use. The opening sentence of that paragraph provides that "[t]he record indicates inconsistencies as to the reports made by the claimant," and then goes on to give the inconsistent reports of marijuana use as one such example. It is not clear if the ALJ's conclusion is based solely on the statements regarding marijuana use, is based on all inconsistent statements, or is based not just on the inconsistent statements discussed in that paragraph but also on the other credibility factors discussed in the preceeding paragraphs. On remand, the Court directs the ALJ to clarify how he assessed Plaintiff's credibility based on inconsistent statements regarding marijuana use. Overall, the ALJ's credibility determination is not patently wrong.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 3rd day of February, 2015.

                                            s/ Paul R. Cherry
                                            MAGISTRATE JUDGE PAUL R. CHERRY
                                            UNITED STATES DISTRICT COURT

cc:    All counsel of record